# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1897 | **DATE** | 12/11/2003 |
| **CASE TITLE** | Hamilton vs. O'Connor Chevrolet. Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion to dismiss Counts II and IV of the Second Amended Complaint [28-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | DEC 1 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 34 |
| | Copy to judge/magistrate judge. | | 12/11/2003 | |
| MD | courtroom deputy's initials | 03 DEC 11 AM 4:47 | date mailed notice | |
| | | Date/time received in central Clerk's Office | MD mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEBORAH AND KWANZA HAMILTON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> O'CONNOR CHEVROLET, INC., ) <br> ) <br> Defendant. ) <br> ) | No. 02 C 1897 <br> Judge Joan H. Lefkow |

## MEMORANDUM OPINION AND ORDER

On August 5, 2003, plaintiffs, Deborah and Kwanza Hamilton ("the Hamiltons"), filed an eight-count Second Amended Class Action Complaint against defendant O'Connor Chevrolet, Inc. ("O'Connor"), arising from O'Connor's sale and financing of a used automobile to the Hamiltons on March 15, 2001. O'Connor has moved to dismiss Counts II and IV of the Second Amended Class Action Complaint based on the applicable statute of limitations. Count II of the complaint alleges on behalf of "Class A" violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §1638. Count IV alleges on behalf of "Class B" violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. The court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, this court grants the motion to dismiss Counts II and IV.

1

## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S 41, 45-46 (1957); *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001). In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the compliant, and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon v. Page*, 291 F.3d 485, 486 (7th Cir. 2002).

## FACTS

On March 15, 2001, the Hamiltons purchased a used 1996 Chrysler sedan from O'Connor. (Sec. Am Comp. ¶ 6.) On that day, the Hamiltons signed a first retail installment contract that disclosed an interest rate of 12.75 percent. (*Id.* at ¶ 12.) O'Connor represented to the Hamiltons that this was the "best deal" they could obtain. (*Id.*) Despite O'Connor's "best deal" assurance, the Hamiltons could have obtained a lower financing rate elsewhere. (Sec. Am Comp. Ct. I ¶¶ 50, 51.) O'Connor did not provide the Hamiltons with a proper credit-term disclosure before the consummation of the transaction. (Sec. Am Comp. Ct. I ¶ 47.) In addition, O'Connor allegedly told the Hamiltons during the transaction that "they were receiving the 'black book' price on the car because they were black." (Sec. Am Comp. Ct. II ¶ 70.)

Approximately two weeks after March 15, 2001, O'Connor asked the Hamiltons to return to the dealership because GMAC Financial Services ("GMAC") "had made a mistake" and that

the original interest rate was going to increase. (Sec. Am Comp. ¶¶ 22, 23.) When the Hamiltons returned to the dealership, O'Connor presented them with a second retail installment contract and told them that the interest rate had to be raised to 15.75 percent. (*Id.* at ¶¶ 24, 27.) O'Connor explained that the increase was necessary because GMAC had rejected the Hamiltons' credit. (*Id.* at ¶ 25.) The Hamiltons allege that the true reason for the increased interest rate was because GMAC was purchasing the installment contract from O'Connor and GMAC would not agree to pay O'Connor as large a "kick-back" for the contract as O'Connor expected. (*Id.*) The Hamiltons signed the second contract, which O'Connor then backdated to March 15, 2001. (*Id.* at ¶ 28.) The Hamiltons were not provided with a written statement of specific reasons for the increased interest rate. (Sec. Am Comp. Ct. IV ¶ 87.)

Each year, O'Connor allegedly calls back between 250 and 500 prior customers and requires them to sign a second, or even third, retail installment contract without providing notice as to the reason for the initial credit rejection. (Sec. Am Comp. Ct. II ¶¶ 56, 57, 91.) The new contracts are then backdated to the original date of purchase. (*Id.*)

On March 14, 2002, the Hamiltons timely filed a four-count Complaint against O'Connor.[1] Count I alleged that O'Connor violated the TILA by not providing the Hamiltons with proper disclosures, in a form they could keep, before the consummation of the first retail installment contract on March 15, 2001. (Comp. Ct. I ¶¶ 35, 36.) Count II alleged that O'Connor violated the ECOA by discriminating against the Hamiltons because of their race. (Comp. Ct. IV

---

[1]The Truth in Lending Act provides that "[a]ny action under this section may be brought in any United States district court . . . within one year from the date of the occurrence." 15 U.S.C. § 1640(e); *Harlan v. Al Piemonte Nissan, Inc.*, 2002 WL 31155061, *5 (N.D. Il. Sept. 26, 2002) ("TILA violations accrue on the date upon which the loan instrument is signed."). The Equal Credit Opportunity Act provides that any action under its provisions shall be brought within "two years from the date of the occurrence of the violation." 15 U.S.C. § 1691(f).

¶¶ 45.) Counts III and IV are not relevant to this motion. On April 23, 2002, the Hamiltons filed a five-count Amended Complaint against O'Connor. Counts I and II of the Amended Complaint were identical to Counts I and II of the initial Complaint. The Hamiltons filed the instant Second Amended Class Action Complaint on August 5, 2003, seventeen months after their initial Complaint.

The Hamiltons bring Count II (Violations of the TILA) of their Second Amended Class Action Complaint against O'Connor on behalf of "Class A"–the estimated 250 to 500 similarly situated individuals within the state of Illinois who, within the applicable statutory time period, entered into a retail installment contract with O'Connor, were declined financing on the terms disclosed in that retail installment contract, and thereafter entered into another retail installment contract with O'Connor that was backdated. (Sec. Am Comp. Ct. II ¶¶ 55, 56.) The Hamiltons allege that the backdating of the second or third retail installment contract "gives rise to the TILA claim at the heart of this Count." (*Id.* ¶ 57.)

The Hamiltons bring Count IV (Violations of the ECOA) of their Second Amended Class Action Complaint against O'Connor on behalf of "Class B"–the estimated 250 to 500 similarly situated individuals within the state of who, within the applicable statutory time period, entered into a retail installment contract with O'Connor, were declined financing by O'Connor on the terms disclosed in the retail installment contract, and were not provided with a true and accurate written notice of adverse action by O'Connor explaining the real reasons why financing was declined on the original contract terms. (Sec. Am Comp. Ct. IV ¶ 75.) The Hamiltons allege that it is "O'Connor's failure to provide the real reasons why financing was denied on the first retail installment contract (or for that matter, *any* reason in writing) that gives rise to the ECOA claim at the heart of this Count." (*Id.* ¶ 77.)

## DISCUSSION

O'Connor asserts that Counts II and IV of the Second Amended Class Action Complaint are barred by the relevant statute of limitations. In response, Hamilton asserts that the claims were timely filed pursuant to the "relation-back" doctrine of Federal Rule of Civil Procedure Rule 15(c). Alternatively, Hamilton claims the TILA and ECOA statute of limitations are tolled by the doctrine of fraudulent concealment.

### I.    The Relation-Back Doctrine

Under Federal Rule of Civil Procedure 15(c)(2) & (3), an amended complaint "chang[ing] the party or the naming of the party against whom the claim is asserted" relates back to the date of the original pleading "when the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth . . . in the original pleading." FED. R. CIV. PROC. 15(c)(2). The Advisory Committee Notes to the 1966 amendments to Rule 15(c) state that the addition of defendants by amendment "extends by analogy to amendments changing plaintiffs." Advisory Committee Notes on Fed. R. Civ. P. 15(c). An amended complaint that relates back to the original complaint is deemed to be filed on the date the original complaint was filed for purposes of tolling the statute of limitations. *See Moore v. Allstate Ins. Co.*, 928 F.Supp. 744, 752 (N.D. Ill. 1996).

Courts apply a four-factor inquiry when determining whether additional claims by new plaintiffs relate back to the original filing date. *Hawkins v. Groot Indust., Inc.*, 210 F.R.D. 226, 232 (N.D. Il. 2002) (citing *Olech v. Village of Willowbrook*, 138 F.Supp.2d 1036, 1044 (N.D. Il. 2000)). The four factors favor relation back when (1) the new plaintiffs' claim arose out of the "same conduct, transaction or occurrence" set forth in the original complaint; (2) the new plaintiffs share an "identity of interest" with the original plaintiff; (3) the defendant has "fair

notice" of the new plaintiffs' claim; and (4) the addition of the new plaintiffs will not cause the defendant prejudice. *Id.* The crucial question is "whether the defendant had such notice of the added claim at the time the action was commenced that relation back of the added claim will not cause defendant undue prejudice." *Paskuly v. Marshall Field & Co.*, 494 F.Supp. 687, 688 (N.D. Il. 1980); *accord Olech*, 138 F.Supp. at 1042 (noting that the court should "focus on the questions of fair notice and absence of undue prejudice.").

The court will determine below the applicability of the relation-back doctrine to the TILA class action claim and the ECOA class action claim.

## A. Count II: TILA Class Action Claim

Count I of the initial Complaint alleged that O'Connor violated TILA, § 1638(b)(1), by failing to provide the Hamiltons with proper disclosure of the financing terms before consummation of the "original retail installment contract." The Second Amended Class Action Complaint raises for the first time the allegation that O'Connor violated the TILA when it consummated second or third retail installment contracts with its customers and then backdated those contracts. The Hamiltons admit in the Second Amended Class Action Complaint that "[i]t is the backdating of the second or third retail installment contract that gives rise to the TILA claim at the heart of [Count II]." (Sec. Am Comp. Ct. II ¶ 57.)

The Hamiltons argue that the claims asserted in the Second Amended Class Action Complaint "arise from the same conduct that is set forth in the original complaint–O'Connor's yo-yo sales practice of giving possession of vehicles to consumers, advising them that financing on the requested terms is being arranged, but then forcing those same consumers to return to the dealership to sign a higher interest rate contract." (Pl. Resp. to Mot. to Dismiss, at 5.) However, the initial Complaint did not even mention that the Hamiltons returned to the dealership and

signed a second retail installment contract. Thus, the Second Amended Class Action Complaint states a new and distinct TILA claim based on new factual allegations. Relation-back is improper when the amendments concern new and distinct claims, even though they may arise from the same general occurrence or injury. *Commonwealth Financial Corp. v. USAmeribancs, Inc.*, 1987 WL 19142, *4 (N.D. Il. Oct. 20, 1987). Such claims fail to give fair and adequate notice to defendants of the new claims in the amended complaint. *Id.*; *see also In re Olympia Brewing Co. Securities Litigation*, 612 F.Supp. 1370, 1372 (N.D. Ill. 1985) (quoting 3 J. MOORE, MOORE'S FEDERAL PRACTICE 15.15[2] at 15-196 (1985 & Supp. 1985))("an amendment which states [an] entirely new claim for relief based on different facts will not relate back . . . ."). Thus, Count II of the Second Amended Class Action complaint does not relate back to the initial complaint and is therefore barred by the TILA statute of limitations.

### B. Count IV: ECOA Class Action Claim

Count II of the original complaint alleges that O'Connor violated ECOA, § 1691(a), when it "discriminated against Plaintiffs, who are black" and precluded them from obtaining an optimal interest rate. (Comp. Ct. II ¶ 45.) However, the Hamiltons state in Count IV of their Second Amended Class Action Complaint that "[i]t is O'Connor's failure to provide the real reasons why financing was denied on the first retail installment contract (or for that matter, *any* reason in writing) that gives rise to the ECOA claim at the heart of [Count IV]." (Sec. Am Comp. Ct. IV ¶ 77.) The Hamiltons also state in the Second Amended Complaint that "Defendant *further* violated the Plaintiff's rights under the ECOA on March 15, 2001, when it represented that their financing had been approved at 12.75% APR." (Sec. Am Comp. Ct. III ¶ 73, emphasis added). This language from the second amended complaint is significant because neither the original nor amended complaint ever mentioned that financing was denied on the first

7

contract. The first two complaints merely state that Hamilton's purchase was "financed at an APR of 15.75%." (Comp. ¶ 10; Am Comp. ¶ 10.) The Second Amended Class Action Complaint now alleges for the first time that the 15.75 percent interest rate is the rate from the second contract, not the first contract, which imposed a 12.75 interest rate. (Sec. Am Comp. ¶ 27.)

As with the TILA claim, the Second Amended Class Action Complaint states a new and distinct ECOA claim based on new factual allegations. Thus, Count IV of the Second Amended Class Action complaint does not relate back to the initial complaint and is therefore barred by the ECOA statute of limitations.

## II. Doctrine of Fraudulent Concealment

The Hamiltons allege that O'Connor fraudulently backdated the operative retail installment contract to reflect a March 15, 2001 date. "It was actually O'Connor's fraud that prevents one from being able to tell when exactly the operative contract was signed." (Pl. resp. to Mot. to Dismiss, at 6.) Thus, the Hamiltons contend that O'Connor's "fraudulent concealment" of the actual date of the contract tolls the TILA and ECOA statute of limitations.

The doctrine of fraudulent concealment tolls the statute of limitations when the plaintiff establishes that the defendant took "active steps to prevent the plaintiff from suing in time . . . ." *Harlan*, 2002 WL 31155061 at * 4 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1991)); *see also U.S. v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)(To toll the statute of limitations, "[e]xtraordinary circumstances beyond the litigant's control must have prevented timely filing."). The Hamiltons fail to explain how O'Connor's backdating of the second retail installment contract by two weeks, with the Hamiltons present, on approximately March 29, 2001, prevented the Hamiltons from filing suit based on that action until August 5,

2003. Thus, the doctrine of fraudulent concealment does not toll the statute of limitations in this case.

## ORDER

For the reasons stated above, the court grants on the motion to dismiss Counts II and IV of the Second Amended Class Action Complaint (#28).

ENTER: *Joan H. Lefkow*

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: December 11, 2003